Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
Law Office of Benjamin R. Osborn
102 Bergen St.
Brooklyn, NY 11201
Phone: (347) 645-0464
Email: ben@benosbornlaw.com

Samuel J. Strauss (to be admitted *Pro Hac Vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson Street #201 | Madison, WI 53703
936 N 34th Street #300 | Seattle, WA 98103
Telephone: (608) 237-1175

*Attorneys for Plaintiffs and the Proposed Class*

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICE ZHANG and WAYNE TSENG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation,<br>Defendant. | Case No.: 3:21-cv-07652-LB<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE |

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  LEGAL STANDARDS .......................................................................................... 2

III.  ARGUMENT ...................................................................................................... 2

   A.  Ancestry's motion to dismiss and strike should be denied as moot because *Zhang* must be remanded to California state court. ......................................................... 2

   B.  The "first-to-file" rule does not apply because *Zhang* and *Callahan* are now pending before the same judge, and because the *Zhang* action belongs in California state court. ............................................................................................ 3

   C.  Ancestry's procedurally improper request for a stay pending the appeal in *Callahan v. Ancestry.com* should be denied. ........................................................ 4

   D.  Plaintiffs have properly alleged injury and Article III standing. ........................... 6

   E.  CDA immunity does not apply because Ancestry has not shown it had a reasonable basis to believe yearbook authors or publishers intended publication on the Internet, and because Ancestry is an information content provider. ........ 10

   F.  Copyright preemption does not apply because Ancestry uses Plaintiffs' photographs to advertise a separate product. ...................................................... 12

   G.  Plaintiffs have stated a claim for intrusion upon seclusion. ............................... 14

   H.  Plaintiffs have stated unjust enrichment and UCL claims. ................................. 15

   I.  Ancestry's motion to strike Plaintiffs' request for statutory damages should be denied because Plaintiffs have properly alleged mental anguish, and because mental anguish is not required to state a claim for statutory damages. ............... 16

   J.  Ancestry's request to strike restitution-based claims should be denied. ............. 17

IV.  CONCLUSION .................................................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Cases**

*Andreoli v. Youngevity Int'l, Inc.*, No. 16-cv-02922, 2018 WL 1470264
  (S.D. Cal. Mar. 23, 2018) .................................................................. 3

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015).............................. 15

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003)......................................... 4, 10, 11, 12

*Callahan v. Ancestry.com,* No. 3:20-cv-08437 (N.D. Cal. 2021).................... 3, 4, 5, 6, 10, 11, 13

*Callahan v. PeopleConnect*, No. 20-cv-09203 (N.D. Cal. 2021) ....... 1, 6, 9, 10, 11, 12, 13, 14, 16

*Cf. Sonner v. Premier Nutrition Cor*p., 971 F.3d 834 (9th Cir. 2020)............................ 17

*Cf. Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289 (N.D. Cal. 2013) ............. 4

*Church of Scientology of Calif. v. U.S. Dep't of Army*, 611 F.2d 738 (9th Cir. 1979) ................. 4

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962)......................................... 5, 6

*Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800 (1976) ............................... 4

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387 (Cal. 2001) ...................... 8

*Dent v. Renaissance Mktg. Corp.*, No. 14-cv-2999, 2015 U.S. Dist.
  LEXIS 70248 (N.D. Ill. June 1, 2015) ....................................................... 13

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007) ............. 5

*Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460 (9th Cir. 1997)................................ 14

*Downing v. Abercrombie Fitch*, 265 F.3d 994 (9th Cir. 2001)................................. 6, 8

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ......................... 15

*ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003)............................ 8

*Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ................. 11, 12

*Fausto v. Credigy Services Corp.*, 598 F. Supp. 2d 1049 (N.D. Cal. 2009)........................ 14

*Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996) ............................................ 14

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011)............................... 7

*Henderson v. JPMorgan Chase Bank*, No. 11-cv-3428, 2011 WL 4056004
  (C.D. Cal. Sept. 13, 2011) ................................................................. 3

*Hoeun Yong v. Immigr. & Nat. Serv.*, 208 F.3d 1116 (9th Cir. 2000) ........................... 5

*Iglesias v. Welch Foods Inc.*, No. 17-cv-219, 2017 WL 1227393
  (N.D. Cal. Apr. 4, 2017) ........................................................................... 3

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767
  (N.D. Cal. 2019 ............................................................................... 14, 15

*In re Google, Inc. Privacy Policy Litigation*, No. 12-cv-1382, 2013 WL 6248499
  (N.D. Cal. Dec. 3, 2013) ........................................................................... 9

*Int'l Union v. Cty. of Plumas*, 559 F.3d 1041 (9th Cir. 2009) .......................... 2

*IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH
  (N.D. Cal. Nov. 6, 2020) ........................................................................ 17

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146 (9th Cir. 2010) ...... 14

*Knapke v. PeopleConnect Inc.*, No. 21-cv-262, 2021 WL 3510350
  (W.D. Wash. Aug. 10, 2021) ...................................................... 1, 10, 12, 13

*Landis v. North American Co.*, 299 U.S. 248 (1936) ...................................... 5

*Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723 (2000) ................................. 15

*Lively v. Caribbean Cruise Line, Inc.*, No. 2:14-cv-00953l, 2014 WL 4377924
  (E.D. Cal. Sep. 3, 2014) ............................................................................ 5

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) ....................... 5

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) ............................. 13

*Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) ............................ 2

*Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988) ............................... 7

*Miller v. Collectors Universe* 159 Cal. App. 4th 988 (Cal. Ct. App. 2008) .......... 16

*Moore v. Regents of University of California*, 51 Cal.3d 120 (Cal. 1990) ............ 7

*Morgan v. Bank of Am., N.A.*, No. 20-cv-157, 2020 WL 3979660 (E.D. Wash. July 14, 2020).... 3

*Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974)................. 7, 9

*Nayab v. Capital One* Bank, 942 F.3d 480 (9th Cir. 2019) .............................. 2

*Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003) ............................................... 4

*Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986)........................ 4

*Polo v. Innoventions International, LLC*, 833 F.3d 1193 (9th Cir. 2016) ............... 2

*Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376 (S.D.N.Y. 2016) .............. 9

*Rodriguez v. Taco Bell Corp.*, No. 13-cv-01498, 2013 WL 5877788
  (E.D. Cal. Oct. 30, 2013)........................................................................... 3

*Rubio v. Capital One Bank,* 613 F.3d 1195 (9th Cir. 2010) ........................................ 7

*Sanders v. Am. Broad. Co., Inc.*, 20 Cal. 4th 907 (Cal. 1999) ................................... 15

*Sessa v. Ancestry.com,* No. 20-cv-2292, 2021 WL 4245359
   (D. Nev. Sept. 16, 2021) ...................................... 1, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17

*Sheehy v. Santa Clara Valley Transp. Auth.*, No. 14-cv-01325, 2014 WL 2526968
   (N.D. Cal. June 4, 2014) ...................................................................................... 3

*Thomas v. Smith-Palluck Assocs. Corp.*, No. 2:17-cv-02001, 2019 WL 1586750
   (D. Nev. Apr. 12, 2019) ....................................................................................... 5

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ............................................ 1, 6

*Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136 (9th Cir. 2003) ....................... 2

**Statutes**

Cal. Civ. Code § 3344 ............................................................................................ 12, 16

Cal. Bus. & Prof. Code § 17200 ............................................................................. 16, 17

Communications Decency Act, 47 U.S.C. § 230 ................................................ 1, 10, 11, 12

Fed. R. Civ. P. 12 ....................................................................................................... 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   PRELIMINARY STATEMENT

For the reasons stated in Plaintiffs' pending motion to remand, this case should be in state court. *See* ECF No. 12 (motion); ECF No. 22 (reply in support). Ancestry has repeatedly asserted that this Court lacks subject matter jurisdiction because the plaintiffs do not have Article III standing, including in the motion presently before this Court. *Id.* Accordingly, *Zhang* must be remanded to state court, and this Court should deny Ancestry's motion as moot.

If this Court elects to retain jurisdiction over *Zhang* and rule on Ancestry's motion to dismiss and strike, Plaintiffs respectfully request that this Court revisit its previous Orders in which it dismissed similar claims on grounds that the plaintiffs lacked Article III standing, and wrote that Ancestry would be protected by the Communications Decency Act. *See* Order, No. 20-cv-08437, Dkt. No. 30 ("March 1 Order"); Order, Dkt. No. 46 ("June 15 Order"). Since the Court issued its Orders, the relevant law has changed. With respect to standing, in *TransUnion LLC v. Ramirez* the Supreme Court held that courts must ask whether the statute has a "common-law analogue," and if so must analyze whether the alleged injury bears a "close relationship" to the injury recognized at common-law. 141 S. Ct. 2190, 2204 (June 25, 2021). Two district courts have held that plaintiffs alleged "injury in fact" in right of publicity cases against websites that use yearbook photos to advertise subscriptions. *Callahan v. PeopleConnect*, No. 20-cv-09203, Dkt. No. 76, at *22-24, *29-30 (N.D. Cal. Nov. 1, 2021) (Section 3344); *Sessa v. Ancestry.com,* No. 20-cv-2292, 2021 WL 4245359, at *4-6 (D. Nev. Sept. 16, 2021) (Nevada statutory right of publicity). With respect to CDA immunity, three district courts in this circuit have departed from this Court's reasoning and denied motions to dismiss on grounds of CDA immunity. *Callahan v. PeopleConnect*, at *11; *Sessa*, at *10-11; *Knapke v. PeopleConnect Inc.*, No. 21-cv-262, 2021 WL 3510350, at *3-4 (W.D. Wash. Aug. 10, 2021).

For the reasons stated below, none of Ancestry's purported grounds for dismissal are justified. Accordingly, if this Court elects to consider Ancestry's motion rather than remanding, the motion should be denied.

1

## II.    LEGAL STANDARDS

2

3      On a 12(b)(1) motion for lack of jurisdiction, when the attack is "facial," the court

4  "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most

5  favorable to the plaintiff[]." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th

6  Cir. 2003).

7      On a 12(b)(6) motion, the court similarly "accept[s] factual allegations in the complaint

8  as true and construe[s] the pleadings in the light most favorable to the nonmoving party."

9  *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). A claim survives if

10 it is "plausible on its face." *Nayab v. Capital One* Bank, 942 F.3d 480, 485 (9th Cir. 2019)

11 (quotation omitted).

## III.    ARGUMENT

12 **A.    Ancestry's motion to dismiss and strike should be denied as moot because *Zhang*
       must be remanded to California state court.**

13      As Plaintiffs argue more fully in their pending motion to remand, *Zhang v. Ancestry.com*

14 must be remanded to California state court. *See* ECF Nos. 12 and 22.

15      Remand is required for two independent reasons. First, Ancestry removed the *Zhang* case

16 to federal court, then filed a motion to dismiss asserting the federal court lacks jurisdiction

17 because the Plaintiffs lack Article III standing. The Ninth Circuit has ruled that in this

18 circumstance, the case must be remanded. *Polo v. Innoventions International, LLC*, 833 F.3d

19 1193 (9th Cir. 2016) (reversing dismissal and instructing district court to remand when defendant

20 removed and subsequently moved for summary judgment on grounds the plaintiff lacked Article

21 III standing). Remand is *required*; district courts do not have discretion to dismiss. *Id.*, at 1196

22 ("the district court generally *must* remand the case to state court, rather than dismiss it")

23 (emphasis in original). *See also Int'l Union v. Cty. of Plumas*, 559 F.3d 1041, 1045-46 (9th Cir.

24 2009) (directing the district court to remand to state court and "determine whether fees, costs, or

25 sanctions should be imposed . . . for wast[ing] the court's time" after the defendant removed the

26 case to federal court, then asserted the district court lacked subject matter jurisdiction).

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION          Case No.: 3:21-cv-07652
TO DISMISS AND STRIKE - 2

Second, Ancestry is judicially estopped from removing *Zhang* because of arguments it previously advanced before this Court. In *Callahan v. Ancestry.com*, Ancestry successfully argued that plaintiffs with substantially similar claims lacked Article III standing. *See* 3:20-cv-08437, Dkt. No. 33, at *4-8; June 15 Order, at *4-8. Plaintiffs' counsel filed the *Zhang* case in California state court precisely because this Court ruled the plaintiffs in *Callahan* lacked standing. Article III standing is not required in state court. Now, Ancestry has taken an inconsistent position by removing this action to federal court. Because Ancestry is judicially estopped from asserting a federal court has subject matter jurisdiction to hear these claims, the case must be remanded. *See Iglesias v. Welch Foods Inc.*, No. 17-cv-219, 2017 WL 1227393 at *2-3 (N.D. Cal. Apr. 4, 2017) (applying judicial estoppel and granting remand when defendants attempted removal after previously arguing lack of standing).

Because *Zhang* must be remanded to state court, Ancestry's motion to dismiss and strike should be denied in its entirety as moot. *See, e.g.*, *Morgan v. Bank of Am., N.A.*, No. 20-cv-157, 2020 WL 3979660 (E.D. Wash. July 14, 2020) (denying motion to dismiss, granting motion to remand, and awarding costs and fees in identical circumstances).

**B.   The "first-to-file" rule does not apply because *Zhang* and *Callahan* are now pending before the same judge, and because the *Zhang* action belongs in California state court.**

On November 2, this Court granted Ancestry's unopposed motion to relate the *Zhang v. Ancestry.com* and *Callahan v. Ancestry.com* actions. ECF No. 18. Because the two cases are now pending before the same judge, the "first-to-file" rule does not apply. *Andreoli v. Youngevity Int'l, Inc.*, No. 16-cv-02922, 2018 WL 1470264, at *2 (S.D. Cal. Mar. 23, 2018) (declining to apply "first-to-file" doctrine because the "concerns of judicial efficiency and uniformity" that motivate the rule are not present "where the two actions at issue are pending before the same judge"). There are many cases supporting the same proposition.[1]

---

[1] *See, e.g.*, *Rodriguez v. Taco Bell Corp.*, No. 13-cv-01498, 2013 WL 5877788, at *6-7 (E.D. Cal. Oct. 30, 2013); *Henderson v. JPMorgan Chase Bank*, No. 11-cv-3428, 2011 WL 4056004, at *2 (C.D. Cal. Sept. 13, 2011); *Sheehy v. Santa Clara Valley Transp. Auth.*, No. 14-cv-01325, 2014 WL 2526968, at *2 (N.D. Cal. June 4, 2014).

This stands to reason. The "first-to-file" rule is "a discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district." *Church of Scientology of Calif. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979). Here, the relevant issues in both *Zhang* and *Callahan v. Ancestry.com* are pending before a single district court. The same court will decide the *Callahan* plaintiffs' motion for indicative ruling; the *Zhang* plaintiffs' motion to remand; and Ancestry's motion to dismiss and strike in *Zhang*. Accordingly, there is no risk of "duplicative litigation" or "conflicting judgments." *Cf. Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013).

The first-to-file rule has no bearing on the Plaintiffs' ability to pursue their claims in state court if remand is granted. The rule does not apply to parallel actions proceeding in state and federal court. As the Supreme Court explained, "as between state and federal courts . . . the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 817 (1976). In our dual state and federal court system, "overlapping or even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity." *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003). This principle is "deeply rooted in our system," *id.,* at 1159, and must be respected even though it may produce "inefficient simultaneous litigation in state and federal courts on the same issue." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524-25 (1986). *See also id.,* at 295 (because "the state and federal courts had concurrent jurisdiction . . . neither court was free to prevent either party from simultaneously pursuing claims in both courts.").

**C.    Ancestry's procedurally improper request for a stay pending the appeal in *Callahan v. Ancestry.com* should be denied.**

In a footnote, Ancestry requests that this Court stay the *Zhang* case pending the Ninth Circuit's resolution of the appeal in *Callahan v. Ancestry.com*. ECF No. 14, at *6. Ancestry has not filed a properly noticed motion to stay. This denies Plaintiffs a fair opportunity to oppose Ancestry's implicit motion. *See* Civil L.R. 7 (procedure for requesting relief). Ancestry's request

should be denied on these grounds. Furthermore, any stay request should be denied as moot because *Zhang* must be remanded to state court.

Even if these points were not dispositive (they are), Ancestry has failed to meet its burden of showing a stay is necessary. *Landis* stays pending other proceedings are seldom granted. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1109 (9th Cir. 2005) (*citing Landis v. North American Co*., 299 U.S. 248, 255 (1936)). "[I]f there is even a fair possibility that the stay . . . will work damages to someone else," the moving party "must make out a clear case of hardship or inequity." *Landis*, at 255.

Here, all three of the factors adopted by the Ninth Circuit in *CMAX* weigh against a stay. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). <u>First</u>, Plaintiffs will suffer harm through the delay of monetary recovery and injunctive relief against ongoing harm to their intellectual property and privacy rights. *See Lively v. Caribbean Cruise Line, Inc*., No. 2:14-cv-00953l, 2014 WL 4377924 at *3 (E.D. Cal. Sep. 3, 2014); *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1112 (9th Cir. 2005) (delay is particularly harmful where the plaintiffs seek "injunctive relief against ongoing and future harm").

Ancestry cannot provide a definite date on which its requested stay would expire. A decision in *Callahan v. Ancestry.com* is likely years away. The parties have not yet submitted opening briefs. Stays of indefinite and protracted length are heavily disfavored. *See, e.g., Dependable Highway Exp., Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1066 (9th Cir. 2007) ("stays should not be indefinite"); *Thomas v. Smith-Palluck Assocs. Corp*., No. 2:17-cv-02001, 2019 WL 1586750 at *2 (D. Nev. Apr. 12, 2019) ("Indefinite stays are at odds with the Federal Rules of Civil Procedure"); *Hoeun Yong v. Immigr. & Nat. Serv*., 208 F.3d 1116 (9th Cir. 2000) (reversing stay because it "could remain in effect for a lengthy period of time").

<u>Second</u>, Ancestry fails to identify any judicially recognized hardship or inequity it would suffer from this case moving forward. "[B]eing required to defend a suit . . . does not constitute a clear case of hardship or inequity." *Lockyer*, at 1112.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE - 5                    Case No.: 3:21-cv-07652

<u>Third</u>, Ancestry has not demonstrated that a stay would "simplify" relevant issues. *See CMAX*, at 258. The appeal in *Callahan v. Ancestry.com* has no bearing on Plaintiffs' motion to remand. Nothing would be gained by staying this action before ruling on the motion to remand.

**D.    Plaintiffs have properly alleged injury and Article III standing.**

In *Sessa*, the court held that plaintiffs have Article III standing to pursue claims against Ancestry.com under Nevada's right of publicity statute. *Sessa*, 2021 WL 4245359, at *4-6. The *Sessa* court reached this conclusion in part by applying the reasoning of the Supreme Court in *TransUnion LLC v. Ramirez ("TransUnion")*, 141 S. Ct. 2190 (2021), a decision that came down several days after this Court's ruling on standing in *Callahan v. Ancestry.com*. In *Callahan v. PeopleConnect*, the court held that plaintiffs had alleged injury sufficient to satisfy both the "injury" element of their § 3344 claim, and the "injury in fact" requirement for their UCL claim. *Id.*, at *22-23; 29. If this Court does not remand *Zhang* to state court, Plaintiffs respectfully request this Court revisit its ruling in *Callahan v. Ancestry.com* regarding Article III standing in light of the intervening decisions in *TransUnion, Sessa,* and *Callahan v. PeopleConnect*.[2]

California's right of publicity statute complements the historical common-law cause of action for commercial misappropriation of likeness. *Downing v. Abercrombie Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). Accordingly, courts analyzing standing to pursue § 3344 claims must evaluate whether the injuries alleged bear a "close relationship" to the injury recognized by the common-law misappropriation tort. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (June 25, 2021); *Sessa*, 2021 WL 4245359, at *5 (Sept. 16, 2021).

Plaintiffs have alleged at least three forms of injury, each of which was a recognized form of injury under the common-law misappropriation tort, and each of which separately establishes Article III standing. <u>First</u>, Plaintiffs have alleged that Ancestry "denied Plaintiffs the economic value of their likenesses." *See Callahan v. PeopleConnect*, at *22. The *PeopleConnect* court held that because "[e]conomic value may reasonably be inferred from [the website's] use of the

---

[2] Plaintiffs' counsel previously filed a Motion for Indicative Ruling in *Callahan v. Ancestry.com* seeking reconsideration in light of *TransUnion*. No. 3:20-cv-08437, Dkt. Nos. 57 and 60. The arguments advanced in that motion and reply apply equally here.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS AND STRIKE - 6                                    Case No.: 3:21-cv-07652

images to advertise," the website's use satisfies the statutory requirement that the Plaintiff be a "person or persons injured." *Id.*, at \*22-23.

Historically at common law, non-celebrity plaintiffs could bring misappropriation claims without alleging any additional injury beyond the defendant's use and profiting from their likeness. *See, e.g., Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 825–27 n.11 (9th Cir. 1974) (overruled in part on other grounds) ("[T]he appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously economically valueless"); *Moore v. Regents of University of California*, 51 Cal.3d 120, 138 (Cal. 1990) (reviewing case law and concluding "[t]hese opinions hold that every person has a proprietary interest in his own likeness and that unauthorized, business use of a likeness is redressable as a tort"); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806-807 (N.D. Cal. 2011) ("courts have long recognized that a person's 'name, likeness, or other attribute of identity can have commercial value,' even if the individual is relatively obscure"); *Sessa*, at \*6; *PeopleConnect*, at \*22-23.

Second, and relatedly, Plaintiffs have alleged injury through Ancestry's "theft of [their] intellectual property." *See PeopleConnect*, at \*30. The *PeopleConnect* court held that "names and likenesses are intellectual property," and that a website's use of the plaintiffs' intellectual property without compensation satisfies the requirement for alleging "lost money or property" under Cal. Bus. & Prof. Code § 17200. *Id.*, at \*29-30. Because the plaintiffs satisfy the requirements for statutory standing under § 17200, they necessarily satisfy the requirements for standing under Article III. *See Rubio v. Capital One Bank,* 613 F.3d 1195, 1203-04 (9th Cir. 2010) (§ 17200 plaintiff must show "lost money or property sufficient to constitute an injury in fact under Article III of Constitution" in addition to a "causal connection").

Historically at common law, courts recognized that the California right to control the commercial use of one's likeness is an *intellectual property* right, the violation of which is itself injury, just as the use of patented, copyrighted, or trademarked material itself gives rise to a cause of action. *Midler v. Ford Motor Co*., 849 F.2d 460, 463 (9th Cir. 1988) ("the common law rights are also property rights. Appropriation of such common law rights is a tort in California.").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS AND STRIKE - 7

Case No.: 3:21-cv-07652

1   *See also Comedy III Prods., Inc. v. Gary Saderup, Inc*., 25 Cal.4th 387, 399 (Cal. 2001) ("The

2   right of publicity . . . protects a form of intellectual property"); *ETW Corp. v. Jireh Publishing,*

3   *Inc*., 332 F.3d 915, 928 (6th Cir. 2003) ("The right of publicity is an intellectual property

4   right . . . which has been defined as the inherent right of every human being to control the

5   commercial use of his or her identity"). *Sessa* held the plaintiffs had Article III standing because

6   "[a]t common law, even individuals whose likenesses did not have inherent value could assert a

7   *property interest* in their likenesses". *Id.*, at *6 (emphasis added).

8          Because the right of publicity protects property rights, not just privacy, it makes sense

9   that plaintiffs may pursue statutory and right of publicity cases without alleging the disclosure or

10  private information. *See, e.g., Downing*, 265 F.3d 994 (9th Cir. 2001) (use of published

11  photograph of surfing champions in advertising violated plaintiffs' right of publicity despite prior

12  publication). Indeed, nearly all right of publicity cases arise from the copying and misuse of

13  already-published material. Ancestry argues that there can be no injury-in-fact for right of

14  publicity cases based on the distribution of material that is "not private". ECF No. 14, at *7-8.

15  Tellingly, in support it cites solely to cases that do not involve the right of publicity, and to this

16  Court's previous Orders. *Id.*

17         Third, Plaintiffs have alleged mental anguish. Ancestry claims the Complaint fails to

18  provide "concrete facts that could plausibly account for those claimed feelings." ECF No. 14, at

19  *12. In fact, the Complaint describes both the Plaintiffs' emotions and the specific reasons for

20  those emotions. *See, e.g.*, ECF No. 1-1 at *39-40, ¶ 39 ("Complaint") (Plaintiff is "indignant and

21  disgusted by Ancestry's. . . profiting from the illegal use of her photos as a minor . . . She

22  believes Ancestry's use of her photos as an adolescent . . . enables stalking and pedophilic

23  behaviors."). Ancestry suggests this Court should disregard the Plaintiffs' allegations because, in

24  Ancestry's view, the actions described in the Complaint cannot "plausibly account for those

25  claimed feelings." ECF No. 14, at *12. Whether Ancestry believes the Plaintiffs' emotions are

26  justified is irrelevant. On a 12(b)(6) motion, the Court accepts the allegations in the Complaint as

27  true.

28

Historically at common law, mental injury "suffered from an appropriation of the attributes of one's identity" was injury giving rise to a cause of action. *See Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 824-25 (9th Cir. 1974),

Citing this Court's previous rulings, Ancestry asserts that non-celebrity plaintiffs can establish injury-in-fact only if they allege "something more" beyond a defendant's use and profit, such as endorsement or a pre-existing commercial interest. ECF No. 14, at *9. However, an analysis of the common law right of publicity shows that non-celebrities could and can pursue common law tort claims without alleging either of the "something more" factors this Court posited. *See, e.g., Rams v. Def Jam Recordings, Inc*., 202 F. Supp. 3d 376, 390 (S.D.N.Y. 2016) (denying motion to dismiss California common law claim brought by non-celebrity whose photograph was copied from a public website without her permission and used on an album cover). Courts have imported these principles from the common law into their analysis of statutory claims under § 3344. *See, e.g., In re Google, Inc. Privacy Policy Litigation*, No. 12-cv-1382, 2013 WL 6248499, at *9 (N.D. Cal. Dec. 3, 2013) ("Where a plaintiff alleges an unauthorized commercial use of a person's name or likeness, courts generally presume that [injury] has been established for a Section 3344 claim . . . Section 3344 provides a right whose alleged violation creates standing") (quotation omitted). In both *Sessa* and *PeopleConnect*, the courts rejected arguments that plaintiffs must allege either endorsement or pre-existing commercial interest. *Sessa*, at *6 and *6 n. 4; *Callahan v. PeopleConnect*, at *26-27 and *22-23.

Ancestry argues that even if Plaintiffs have alleged Article III injury (they have), standing still would not exists because "there is no plausible link between any such injury and the challenged conduct." ECF No. 14, at *12-13. The *Sessa* court rejected this argument, finding that "[a] favorable ruling would redress the injury by compensating Plaintiffs for the use of their image in advertising and/or enjoining Ancestry's further use thereof." *Id.*, at *6.

E.     **CDA immunity does not apply because Ancestry has not shown it had a reasonable basis to believe yearbook authors or publishers intended publication on the Internet, and because Ancestry is an information content provider.**

In *Sessa*, the court held that the CDA did not protect Ancestry.com as a matter of law from claims under Nevada's right of publicity statute. *Sessa*, 2021 WL 4245359, at *9-11. Two additional courts in this Circuit reached the same conclusion for PeopleConnect, which operates a website with substantially similar business practices. *Callahan v. PeopleConnect*, at *9-12 (N.D. Cal. Nov. 1, 2021) (California right of publicity); *Knapke*, 2021 WL 3510350, at *3-4 (W.D. Wash. Aug. 10, 2021) (Ohio right of publicity). If this Court does not remand *Zhang* to state court, Plaintiffs respectfully request this Court revisit its ruling in *Callahan v. Ancestry.com* regarding CDA immunity in light of the intervening decisions in *Sessa*, *Callahan v. PeopleConnect*, and *Knapke*.

CDA immunity does not protect Ancestry as a matter of law for two reasons. First, as recognized in *Callahan v. PeopleConnect* and *Sessa*, CDA immunity applies only to "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Both requirements must be met: the information must come from "an information content provider," and the information must be "provided by" the information content provider. *Callahan v. PeopleConnect*, at *9. The term "information content provider" is defined as someone "responsible . . . for the creation or development" of the information. *Id.* (*quoting* § 230(f)(3)).

In *Callahan v. PeopleConnect*, the court noted that in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), the Ninth Circuit "gave importance guidance" for the term "provided by," writing that the term "suggests, at least some *active* role by the 'provider' in supplying the material." *Id.* (*quoting Batzel*, at 1032-33) (emphasis in original). Recognizing that a website "could be chilled from posting information if it could not tell whether posting was contemplated by the provider," the court in *Batzel* adopted a "reasonable person" standard. *Id.* CDA immunity exists if "a reasonable person would conclude that the information was provided for publication on the Internet." *Batzel*, at 1033.

In this case, the only people who qualify as "information content providers" are "the yearbook authors/publishers." *PeopleConnect v. Calahan*, at *10; *see also Sessa*, at *11.

1    Therefore, under *Batzel* and the statutory language, CDA immunity applies only if Ancestry

2    received Plaintiffs' yearbook photographs in circumstances under which a reasonable person

3    would conclude the yearbook authors or publishers intended publication on the Internet. *Id.* On

4    the facts alleged in the Complaint, Ancestry fails the *Batzel* reasonable person standard. The

5    yearbooks at issue were published well before the Internet existed and intended for publication

6    only in a local community. *Id.*

7         Similarly, *Sessa* held that Section 230 immunity "does not attach" because "Ancestry

8    alone is responsible for posting the material on its website," and the "mere existence of the hard

9    copy yearbooks does not indicate the publishers 'provided' the yearbooks for publication on the

10   internet." *Sessa*, at *11; *see also Callahan v. PeopleConnect,* at *12 ("if it is obvious that the

11   person or entity providing the information is not the creator, then the service provider 'is the one

12   making the affirmative decision to publish, and so . . . contributes materially to [the] allegedly

13   unlawful dissemination'") (*quoting Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157,

14   1171 (9th Cir. 2008)).

15        Ancestry raises the specter that under *Batzel*, *Callahan v. PeopleConnect*, and *Sessa*, a

16   social media site like Twitter might face liability if a user posted information created by a third

17   party without Twitter's knowledge. ECF No. 14, at *16. This ignores the "reasonable" part of the

18   "reasonable person" standard in *Batzel*. It is likely reasonable for social media sites to conclude

19   that users who post content either created the content themselves, or are posting content they

20   know was intended for publication. But where, as here, Ancestry has good reason to suspect that

21   yearbook authors and publishers do not intend Ancestry's use, there is no CDA immunity. *See*

22   *Callahan v. PeopleConnect*, at *11-12 (the defendant "fails to explain why a service provider

23   should not be held accountable if . . . it is obvious that the person or entity providing information

24   is not the creator or developer.").

25        As the court reasoned in *Callahan v. PeopleConnect*, this Court's decision in *Callahan v.*

26   *Ancestry.com* turned on a finding that people who were not involved in creating yearbooks could

27   qualify as "information content providers." *Id.*, at *11 (*quoting Callahan v. Ancestry.com*, 2021

28

1  U.S. Dist. LEXIS 112036, at \*17-18). This finding is "not consistent with the express definition"

2  in the statute, *id.*, nor is it consistent with *Batzel*.

3      <u>Second</u>, Ancestry is the content creator with respect to the marketing emails and on-

4  screen messages that advertise subscriptions to Ancestry.com. *See* Complaint, at ¶¶ 29-49

5  (emails and on-site messages incorporating Plaintiffs' names and photographs and prompting the

6  recipient to subscribe). As the Court in *Knapke* wrote about similar messages displayed on

7  Classmates.com, "[t]he offending content is generated by Classmates and the advertisement is

8  not merely some passive display of content created by another entity, even if it contains a picture

9  from a school yearbook." *Id.*, at \*4. *See also Sessa*, at \*10 (holding that Ancestry is an

10  information content provider). Where, as here, a website "contributes materially to the alleged

11  illegality" of the content, CDA does not apply, even if the illegal messages incorporate content

12  created by others. *See Fair v. Roommates*, 521 F.3d 1157, 1167-68 (9th Cir. 2008).

13      Ancestry asserts that CDA immunity encompasses any content the website did not itself

14  create, regardless of the circumstances under which the website obtained it, and regardless of

15  how the content is incorporated into advertising messages. *See* ECF No. 14, at \*15 ("[h]aving

16  recognized third parties, not Ancestry, created the yearbooks, the *Sessa* court should have ended

17  its inquiry"). Ancestry's proposed rule is inconsistent with the statutory text of the CDA and the

18  Ninth Circuit's decisions in *Batzel* and *Roommates*. It would also create absurd results. Under

19  Ancestry's rule, a website would be immune from liability for publishing pornographic

20  photographs of children, so long as the website did not itself create the photographs. So too, a

21  website could use a photograph of a famous actress to falsely claim the actress endorsed its

22  products, so long as the website did not create the photograph. The scope of CDA immunity

23  cannot and does not sweep so broadly.

**F.**   **Copyright preemption does not apply because Ancestry uses Plaintiffs' photographs to advertise a separate product.**

    In *Callahan v. PeopleConnect*, the court held that Copyright preemption does not apply

to California § 3344 claims based on a website's use of yearbook photographs to advertise

subscriptions. *Id.*, at *16-21 (*quoting Maloney v. T3Media, Inc*., 853 F.3d 1004 (9th Cir. 2017)).[3]

Likewise, in *Sessa* the court held that Copyright preemption did not apply because "Ancestry

uses Plaintiffs' personas to their commercial advantage rather than merely displaying or

publishing photographs depicting Plaintiffs." 2021 WL 4245359, at *15 (*citing Maloney*).

*Knapke* reached the same conclusion with respect to Ohio right of publicity claims. *Id.*, at *4-5.

Ancestry relies on *Maloney*. ECF No. 14, at *17-18. But the principles announced in

*Maloney* argue against Copyright preemption in this case. Under *Maloney*, "preemption turns on

*how* a copyrighted photograph is used." *Id.*, at 1013 (emphasis in original). If the defendant

merely sells or licenses "the copyrighted images *themselves*," the claim is preempted. *Id.*, at 1018

(emphasis in original). But where, as here, the defendant goes "beyond mere republication of the

photograph" by using the photograph to advertise a separate product, there is no preemption. *Id.*

*See Callahan v. PeopleConnect*, at *19 ("right-of-publicity claims are not preempted by the

Copyright Act when the alleged unauthorized use of the plaintiff's identity extends beyond the

copyrighted work; in some of these cases, the copyrighted work is used to advertise another

product or service") (*quoting Dent v. Renaissance Mktg. Corp*., No. 14-cv-2999, 2015 U.S. Dist.

LEXIS 70248, at *12 (N.D. Ill. June 1, 2015)). Here, Plaintiffs allege Ancestry uses their

photographs to sell paid subscriptions to ancestry.com, a product that includes far more than

access to the specific photograph used to make the sale. Complaint, at ¶ 9. *See Callahan v.

PeopleConnect, Inc.*, at *18-19; *Sessa*, at *15; *Knapke*, at *8-9.

In a footnote, Ancestry attempts to discredit *Sessa* on grounds that "all the information

about the plaintiff to which Ancestry offered access was embodied in the copyrighted yearbook."

ECF No. 14, at *19 n. 18. This misreads the Complaint. Plaintiffs allege Ancestry uses their

likeness to "advertise subscriptions to Ancestry.com." Complaint, at ¶ 9. A subscription to

---

[3] In *Callahan v. PeopleConnect, Inc.*, the court found that the Copyright Act preempted claims arising from the use of yearbook photos to advertise the purchase of the reprinted yearbooks themselves. *Id.*, at *18. Here, Plaintiffs' claims arise from Ancestry's use of yearbook photographs to sell website subscriptions, not yearbooks. Unlike classmates.com, ancestry.com does not sell yearbooks.

Ancestry delivers far more than access to information "about the plaintiff" whose likeness it used to advertise the subscription, and far more than access to the yearbook from which the photograph was taken. Among other things, a subscription provides access to millions page pages of newspapers and other historical records; the ability to create a modify a family tree; and networking tools for connecting with other members. *Id. See Callahan v. PeopleConnect, Inc.*, at *20-21 (copyright preemption did not apply to claims "based on the use of Plaintiffs' names and likenesses to advertise the subscription membership.").

Ancestry argues that "Plaintiffs' claims are similar to those rejected in *Fleet*" and in *Jules Jordan*. ECF No. 14, at *19 (*citing Fleet v. CBS, Inc*., 50 Cal. App. 4th 1911, 1918–24 (1996); *Jules Jordan Video, Inc. v. 144942 Canada, Inc.,* 617 F.3d 1146 (9th Cir. 2010)). Those cases stand for the proposition that "using a portion of the copyrighted work to promote the copyrighted work does not take a publicity-right claim outside of copyright preemption." *Callahan v. PeopleConnect, Inc.*, at *19. Here, by contrast, Ancestry is not using copyrighted photographs to promote sales of the photographs themselves; rather, it uses the photographs to promote sales of ancestry.com subscriptions. *See id.*

**G.    Plaintiffs have stated a claim for intrusion upon seclusion.**

A claim for intrusion upon seclusion exists against "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Fausto v. Credigy Services Corp*., 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (quoting *Deteresa v. Am. Broad. Cos., Inc*., 121 F.3d 460, 465 (9th Cir. 1997)). Whether specific conduct is offensive is typically left to a jury. *See In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019 ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.").

Here, Plaintiffs have alleged a reasonable expectation of privacy in the photographs and biographical information Ancestry is distributing for profit. Complaint, at ¶ 76. Decades ago, when they were teenagers, Plaintiffs consented have their photographs and names printed in yearbooks intended for use by their family and classmates. Plaintiffs did not reasonably expect to

see their photographs and information distributed to a worldwide audience decades later for a profit-making purpose. California law recognizes that people who willingly share personal information among a limited group of social connections do not lose their ability to assert privacy claims when a company shares that information much more broadly for profit. In *In re Facebook*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), Facebook users retained a reasonable expectation of privacy even after they willingly shared personal information with their social connections on Facebook. The court rejected Facebook's position as misguided because "it treats privacy as an all-or-nothing proposition . . . the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law.'" *Id*. at 782 (quoting *Sanders v. Am. Broad. Co., Inc.*, 20 Cal. 4th 907, 916 (Cal. 1999)).

Plaintiffs have alleged facts sufficient for a reasonable jury to conclude that Ancestry's conduct is highly offensive. Ancestry disclosed Plaintiffs' private information to a worldwide audience comprising millions of subscribers and potential subscribers. The information is highly sensitive, including photographs of Plaintiffs as minors, birth years, estimated ages, and geographical location. Also, Ancestry's use is for a commercial purpose to which Plaintiffs did not consent. *See In re Facebook, Inc*., at 797 (plaintiffs adequately alleged offensive conduct when Facebook "disclosed to tens of thousands of app developers and business partners sensitive information about them without their consent, including their photos").

**H.     Plaintiffs have stated unjust enrichment and UCL claims.**

Ancestry asserts that Plaintiffs' unjust enrichment claim is derivative of their section 3344 claim. Not so. California law recognizes plaintiffs may assert a claim for unjust enrichment as a separate cause of action. *See, e.g. ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense.") (*citing Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000)); *see also Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015). Plaintiffs have alleged these elements. Complaint, at ¶¶ 86-90.

Plaintiffs' claim under Cal. Bus. & Prof. Code § 17200 must survive for the same reasons its claim under § 3344 must survive, which are discussed above. *See also Callahan v. PeopleConnect*, at *29-33 (declining to dismiss § 172000 claims derivative of the plaintiffs' § 3344 claim, and "allow[ing] Plaintiffs to proceed with the theory of unjust conferral of a benefit through, in effect, misappropriation").

**I.      Ancestry's motion to strike Plaintiffs' request for statutory damages should be denied because Plaintiffs have properly alleged mental anguish, and because mental anguish is not required to state a claim for statutory damages.**

As explained in Part D, Plaintiffs have properly alleged they suffered mental anguish. Accordingly, Ancestry's request to "strike plaintiffs' statutory damages prayer because there is no plausible mental anguish allegation" should be denied. *Cf.* ECF No 14, at *23.

Even if Plaintiffs had not alleged mental anguish (which they have), Plaintiffs are entitled to seek statutory damages under § 3344 based on the economic injury they have suffered from Ancestry's use of their likenesses without compensation, and based on the injury the suffered from Ancestry's theft of their intellectual property. *See* Part D.

In *Callahan v. PeopleConnect*, the court found that "Section 3344 on its face does not require that a plaintiff have suffered mental anguish in order to be awarded statutory damages." *Id.*, at *25. Rather, the statute "require[s] that a plaintiff have suffered injury in order to be awarded damages, including statutory." *Id.* Although "as a practical matter" many plaintiffs seeking statutory damages "will often have to rely on mental anguish as the hook for statutory damages," it is not the only type of injury that will support a statutory damages claim. *Id.*

Ancestry cites *Miller v. Collectors Universe* for the proposition that "statutory damages . . . appl[y] only where a plaintiff suffered mental anguish." ECF No. 14 at *23 (*citing Miller*, 159 Cal. App. 4th 988 (Cal. Ct. App. 2008). But that is not what *Miller* says. While *Miller* "recognizes statutory damages in § 3344 were meant to compensate plaintiffs who suffer mental anguish, nothing in *Miller* or § 3344 suggests statutory damages are available *exclusively* for that purpose." *PeopleConnect v. Callahan*, at *25 (emphasis in original).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**J.      Ancestry's request to strike restitution-based claims should be denied.**

A Plaintiff may simultaneously pursue a claim for restitution under Cal. Bus. & Prof. Code § 17200 ("UCL"), and a claim for damages based on a remedy at law, if the amounts sought under each theory are not co-extensive. *See, e.g., IntegrityMessageBoards.com v. Facebook, Inc*., No. 18-cv-05286-PJH (N.D. Cal. Nov. 6, 2020) (denying motion to dismiss UCL restitution claims when recovery for future harm was available in restitution but not at law). We cannot yet know whether Plaintiffs have an adequate remedy at law. For example, if this court were to find that Plaintiffs' damages under § 3344 were limited to the fair market value of Plaintiffs' likenesses, the UCL restitution claim would be Plaintiffs' only recourse for pursuing Ancestry's unjust profits. For this reason, dismissal is premature. *Cf. Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal because the plaintiff "seeks the same sum in equitable restitution . . . she requested in damages.") (emphasis added).

## IV.      CONCLUSION

For the above-stated reasons, Ancestry's motion to dismiss and strike should be denied as moot and this case remanded to state court. Alternatively, if this Court retains jurisdiction over *Zhang*, Ancestry's motion to dismiss and strike should be denied.

Dated: November 3, 2021                    By:  _/s/ Michael F. Ram_____
                                            Michael F. Ram
                                            MORGAN & MORGAN
                                            *Attorney for Plaintiffs*
                                            *and the Proposed Class*